Filed 9/22/21  In re Zachary G. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re ZACHARY G., a Person Coming Under the Juvenile Court Law. | B309975 <br><br> (Los Angeles County Super. Ct. No 19CCJP04813A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> JERRY L., <br><br> Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Sabina A. Helton, Judge.  Conditionally affirmed and remanded with directions.

Elizabeth Klippi, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

_____

Jerry L., the biological father of five-year-old Zachary G., appeals the juvenile court's disposition order removing Zachary from the custody of his mother, Shaina G., and placing him in foster care under the supervision of the Los Angeles County Department of Children and Family Services (Department). Jerry, a nonoffending biological (but not presumed) father, contends the court abused its discretion when it denied his request for family reunification services. He also contends the juvenile court and the Department failed to comply with their duties of inquiry and notice under the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related California law. We agree the Department failed to adequately investigate Jerry's claim of Indian ancestry and the court failed to ensure the Department complied with its duty of inquiry. Accordingly, we remand the matter to allow the Department and the juvenile court to remedy these ICWA errors and otherwise conditionally affirm the disposition order.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Initial and First Amended Nondetain Dependency Petitions, Jurisdiction Findings and Disposition Order*

On July 30, 2019 the Department filed a nondetain petition pursuant to Welfare and Institutions Code section 300[1] on behalf of then-three-year-old Zachary and his younger siblings, one-

---

[1]     Statutory references are to this code unless otherwise stated.

year-old R.D. and three-month-old C.D., alleging Shaina had mental and emotional problems and failed to take her prescribed psychotropic medication or obtain recommended mental health treatment; Raymond D., Shaina's boyfriend and the father of R.D. and C.D., had a history of substance abuse and was a current abuser of marijuana; and in June 2019 Shaina had engaged in a violent altercation with R.D. and C.D.'s paternal grandmother in the presence of all three children, resulting in an injury to C.D.

At the July 31, 2019 hearing on the nondetain petition regarding Zachary, Shaina identified Jerry as Zachary's biological father. She stated she did not know Jerry's whereabouts, explaining Jerry had left her when she told him she was pregnant with Zachary, had never paid child support or helped Zachary financially, and had seen Zachary only twice in his life. Shaina filled out Judicial Council form ICWA-020 and denied Indian ancestry.

The court found the Department had made a prima facie case Zachary was a person described by section 300 and released him to Shaina under the temporary supervision of the Department with a variety of support services. Finding Jerry an alleged father, the court declared it had no reason to know at that time that Zachary was an Indian child but deferred the ICWA determination until Jerry's appearance in the case. The court set a jurisdiction hearing for September 26, 2019, which it later continued to November 4, 2019.

After an October 2019 argument between Raymond and Shaina that escalated into a violent incident between Raymond and another man with the children present, the Department filed a first amended petition on November 25, 2019 adding allegations pursuant to section 300, subdivisions (a), and (b), that

Shaina and Raymond had a history of domestic violence, including the October 2019 incident and an August 2019 incident in which Shaina pushed Raymond while he was holding R.D., that put Zachary (and his siblings) at substantial risk of serious physical harm. The first amended petition also added an allegation of alcohol abuse involving Raymond.

The court held a jurisdiction hearing on November 26, 2019. Shaina pleaded no contest to the new allegations under section 300, subdivision (b)(1). The court struck all remaining allegations involving Shaina and found Zachary a person described by section 300, subdivision (b)(1). Proceeding directly to disposition the court declared Zachary a dependent child of the juvenile court and ordered him released to Shaina's custody under the supervision of the Department with family maintenance services.[2] The court set a review hearing for May 26, 2020.

2. *The Department's Section 387 Petition Seeking Removal of Zachary*; *Jerry's First Appearance in the Case*

On July 22, 2020, after having obtained an emergency removal order for the children, the Department filed a section 387 petition seeking a more restrictive placement for Zachary (and his siblings). The supplemental petition alleged Shaina had failed to comply with "[j]uvenile [c]ourt ordered

---

[2] By this time Shaina had secured residence for herself and her children at a domestic violence women's shelter and obtained an order of protection against Raymond. Shaina's other children were also declared dependents of the court, removed from Raymond and released to Shaina under the supervision of the Department.

services of . . . parenting [classes], individual therapy, undergoing [a] psychological assessment and psychiatric evaluation," placing Zachary (and his siblings) at substantial risk of serious physical harm. The Department also alleged Shaina continued to have contact with Raymond despite the active restraining order she had obtained against him.

At the July 27, 2020 detention hearing on the section 387 petition, Jerry, represented by counsel, appeared for the first time and submitted to the jurisdiction of the court. On his ICWA-020 form Jerry declared he had Indian ancestry through Zachary's paternal great-grandmother. He did not identify a specific tribe. Jerry resided in Northern California, acknowledged he had not seen Zachary for some time and doubted Zachary was his child. He requested DNA paternity testing.

The court ordered paternity testing and again found Jerry was an alleged, not a presumed, father. Based on the representations in Jerry's ICWA-020 form concerning possible Indian ancestry, the court ordered the Department "to investigate said claim and make appropriate ICWA notices." The court detained Zachary from Shaina's custody and set the jurisdiction hearing on the Department's section 387 petition for August 28, 2020.

In its August 12, 2020 report for the August 28, 2020 jurisdiction hearing, the Department erroneously asserted, as it had in every report it filed in these proceedings since the initial detention hearing, that the court had made a finding on July 31, 2019 that ICWA did not apply. The report did not mention the court's July 27, 2020 order directing the Department to

5

investigate Jerry's declaration of Indian ancestry as stated in his ICWA-020 form.

In a last minute information filed August 26, 2020, the Department reported it had spoken to Jerry in a telephone interview on August 20, 2020 and Jerry "stated he is not a registered tribe member nor does he have any American Indian ancestry." Jerry also stated he did not want to visit with Zachary "too often," as he was "waiting [to take] the DNA test." "I've always had my doubts," Jerry stated, about whether Zachary was his biological son. He said he had seen Zachary five or six times since he was born.

At the August 28, 2020 jurisdiction hearing, Shaina pleaded no contest to an amended supplemental allegation in the section 387 petition.[3] The court sustained the amended petition; found Zachary a person described by section 300, subdivision (b)(1); dismissed the section 300, subdivision (a), allegations; and continued the contested disposition hearing to October 21, 2020. Meanwhile, Jerry advised the court he was still waiting to be contacted about taking the DNA paternity test.

After twice continuing the disposition hearing at Jerry's request to allow him to obtain the results of his paternity test, the court held the disposition hearing on December 3, 2020. At that time the court declared Zachary a dependent child of the court and removed him from Shaina's custody. The court ordered monitored visitation for Shaina and various family reunification services.

---

[3] The petition was amended by interlineation to strike the allegation that Shaina had failed to abide by the restraining order and contacted Raymond.

Jerry, whose paternity was established by a DNA test in November 2020, requested the court exercise its discretion to award him family reunification services as a biological father. Shaina, the Department and Zachary's counsel opposed that request; and the court denied it, stating, "I will find him to be the biological father, but I don't see him as participatory in this four-year-old child's life such that it would warrant family reunification services for him." The court ordered monitored visitation for Jerry with discretion to the Department to liberalize visitation.

The Department did not address ICWA at the jurisdiction or disposition hearings, and the court never inquired whether the Department had conducted the ICWA inquiry it had ordered.

Jerry filed a timely notice of appeal from the disposition order.

## DISCUSSION

1. *The Court Did Not Err in Denying Jerry Family Reunification Services*

a. *Governing law and standard of review*

As a biological father, and not a presumed father, Jerry is not statutorily entitled to family reunification services. (See Welf. & Inst. Code, § 361.5, subd. (a) [absent certain conditions, when child is removed from parental custody, court "shall" order family reunification services for statutorily presumed father]; *In re Zacharia D.* (1993) 6 Cal.4th 435, 448-449, 451 [a presumed father—one who satisfies the criteria of Family Code section 7611—is entitled to reunification services; biological fathers who do not satisfy the requirements to be a presumed

7

father, in contrast, are not entitled to family reunification services]; *In re E.T.* (2013) 217 Cal.App.4th 426, 436-437.)[4]

The court has discretion to order family reunification services for a biological father, but only upon a finding such services would be in the child's best interests. (§ 361.5, subd. (a) ["[u]pon a finding and declaration of paternity by the juvenile court . . . , the juvenile court may order services for the child and the biological father, if the court determines that the services will benefit the child"].) "'"The concept of a child's best interests 'is an elusive guideline that belies rigid definition. Its purpose is to maximize a child's opportunity to develop into a stable, well-adjusted adult.'"'" (*Jennifer S. v. Superior Court* (2017) 15 Cal.App.5th 1113, 1124.) Relevant considerations include the parent's fitness and history, the strength of the parent-child bond, and the child's need for stability and continuity. (*Ibid.*; *In re William B.* (2008) 163 Cal.App.4th 1220, 1228.) It is the parent's burden to demonstrate the child would benefit from the provision of court-ordered services. (*Jennifer S.,* at p. 1124.)

We review the juvenile court's decision to deny family reunification services to a biological father for abuse of discretion. (*In re Elija V.* (2005) 127 Cal.App.4th 576, 588.) We may reverse the court's decision only when it is arbitrary or irrational. (*In re Caden C.* (2021) 11 Cal.5th 614, 641 [court abuses its discretion when its determination is arbitrary, capricious or patently absurd]; *In re Stephanie M.* (1994) 7 Cal.4th 295, 318 [same].)

---

[4] Jerry does not contend the court erred in finding he was not a presumed father.

b. *The court did not abuse its discretion in finding family reunification services for Jerry were not in Zachary's best interests*

Emphasizing (1) Zachary's reunification with Shaina remained uncertain, (2) there was no finding Raymond (or anyone else) was Zachary's presumed father (cf. *In re J.H.* (2011) 198 Cal.App.4th 635, 649 ["[u]sually, it is not in the child's best interests for a biological father to receive reunification services when another man has been deemed the child's presumed father"]; *In re Elija V., supra,* 127 Cal.App.4th at p. 588 [same]),[5] and (3) there was no evidence Jerry was unstable or presented any risk to Zachary, Jerry argues it was necessarily in Zachary's best interests for Jerry to receive family reunification services and to begin to build a relationship with Zachary that could result in his assuming custody of Zachary should Shaina be unsuccessful in reunifying with him.

Jerry's argument is certainly not unreasonable, but our task is simply to determine whether the juvenile court abused its discretion in denying him family reunification services. Citing Jerry's indifference to Zachary throughout Zachary's life—Jerry long questioned his paternity and made no meaningful effort to see Zachary, support him or be involved in any aspect of his life until receiving the results of the DNA paternity test—the court agreed with Zachary's counsel and the Department that an order of family reunification services was not in Zachary's best interests. However, recognizing Zachary may benefit from knowing Jerry, the court ordered monitored visitation for Jerry

---

[5] Although Raymond told the social worker that he treated Zachary as his own son, he did not seek presumed father status.

9

with discretion to the Department to liberalize. That carefully considered ruling, far from being arbitrary or irrational, was well within the court's broad discretion.[6]

    2. *The Court and the Department Committed ICWA Error*

      a. *ICWA and the duties of inquiry and notice*

"ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards a state court must follow before removing an Indian child from his or her family."[7] (*In re T.G.* (2020) 58 Cal.App.5th 275, 287; see 25 U.S.C. § 1902; *In re Isaiah W.* (2016) 1 Cal.5th 7-8.) ICWA and its controlling federal regulations (25 C.F.R. § 23 (2020)) set minimal procedural protections for state courts to follow before removing Indian children and placing them in foster care or adoptive homes; the statute authorizes states to provide "'a higher standard of protection'" to Indian children, their families and their tribes than the rights provided under ICWA. (*In re T.G.,* at pp. 287-288; see 25 U.S.C. § 1921.) In addition to

---

[6]     Jerry does not identify what other court-ordered services he seeks. To the extent Jerry believes he would benefit from a parenting class, for example, nothing prevents him from asking the Department for recommendations and enrolling in one.

[7]     For purposes of ICWA, an "Indian child" is an unmarried individual under age 18 who is either a member of a federally recognized Indian tribe or is eligible for membership in a federally recognized tribe and is the biological child of a member of a federally recognized tribe. (See 25 U.S.C. § 1903(4) [definition of "'Indian child'"] & (8) [definition of "'Indian tribe'"]; see also Welf. & Inst. Code, § 224.1, subd. (a) [adopting federal definitions].)

significantly limiting state court actions concerning out-of-family placements for Indian children (see *In re T.G.*, at pp. 287-288), ICWA permits an Indian child's tribe to intervene in or, where appropriate, exercise jurisdiction over a child custody proceeding (see 25 U.S.C. § 1911(c); *In re Isaiah W.,* at p. 8.)

To ensure Indian tribes have the opportunity to intervene in, or exercise jurisdiction over, a dependency proceeding, investigation of a family member's belief a child may have Indian ancestry must be undertaken and notice provided to the appropriate tribes.  (§ 224.2, subd. (a) [imposing on the court and child protective services agencies "an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child"]; see *In re Charles W.* (2021) 66 Cal.App.5th 483, 489.)  The duty to inquire "begins with initial contact (§ 224.2, subd. (a)) and obligates the juvenile court and child protective agencies to ask all relevant involved individuals whether the child may be an Indian child."  (*In re T.G.*, *supra*, 58 Cal.App.5th at p. 290; see § 224.2, subds. (a)-(c).)  In addition, section 224.2, subdivision (e), imposes a further duty of inquiry regarding the possible Indian status of the child if the court, social worker, or probation officer has reason to believe that an Indian child is involved in a proceeding."[8]  (See also Cal. Rules of Court, rule 5.481(a)(4) [as

---

[8]    Effective September 18, 2020, after the August 2020 jurisdiction hearing but prior to the December 2020 disposition hearing in the case at bar, section 224.2, subdivision (e), was amended to add a definition of the phrase "reason to believe": "There is reason to believe a child involved in a proceeding is an Indian child whenever the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe."  (§ 224.2, subd. (e).)

amended January 1, 2020, imposing duty of further inquiry if social worker "knows or has reason to know or believe that an Indian child is or may be involved"].)  That further inquiry requires interviewing, "as soon as practicable," extended family members, contacting the Bureau of Indian Affairs and contacting "the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility."  (§ 224.2, subd. (e) & (e)(2).)  If these inquiries result in reason to know the child is an Indian child, notice to the relevant tribes is required.  (§ 224.3; 25 U.S.C. § 1912(a); *In re J.S.* (2021) 62 Cal.App.5th 678, 686; *In re T.G.*, at p. 290.)

> b. *The Department did not adequately investigate Jerry's claim of Indian ancestry*

After the court's July 27, 2020 order directing the Department to speak to Jerry based on his responses in his ICWA-020 form, the social worker asked Jerry whether he was an enrolled member of an Indian tribe or had any Indian ancestry.  Jerry responded no to both questions.  Citing these two ICWA-related questions and Jerry's "no" responses, the Department contends it complied with the court's order and no further inquiry was required.  Had the Department asked Jerry about his ICWA-020 form, clarified any discrepancy between his response on that form and in his subsequent interview with the social worker and confirmed his more recent statement was accurate, we would likely agree it complied with the court's order and no further inquiry duty was triggered.  (See *In re D.S.* (2020) 46 Cal.App.5th 1041, 1053 [Department did not violate duty of inquiry by failing to interview great-grandmother; "[a]lthough D.S.'s great-grandmother may fall within th[e] category" of people

12

reasonably expected to have information about the child's Indian ancestry, the child protective agency could reasonably conclude, based on its detailed communications with the aunt denying Indian ancestry, that no further inquiry was needed because there was no further information of value to obtain from great-grandmother]; see generally *In re J.S.*, *supra*, 62 Cal.App.5th at p. 690 [duty of further inquiry does not require Department to "cast about" for further information or pursue unproductive leads]; *In re D.F.* (2020) 55 Cal.App.5th 558, 570 [same].)

However, the Department provided no evidence the social worker even asked Jerry about the statements in his ICWA-020 form, let alone obtained any evidence clarifying the discrepancy. This was error. (See *In re Gabriel G.* (2012) 206 Cal.App.4th 1160, 1167 [where a discrepancy existed between a father's ICWA-020 form declaring Indian ancestry and his subsequent oral statement to social worker denying Indian ancestry, the Department was obligated to at least clarify the discrepancy before concluding no further investigation was required]; see also *In re L.S.* (2014) 230 Cal.App.4th 1183, 1197-1198 [where the mother made inconsistent statements about which tribe she belonged to and whether, in fact, she had any Indian ancestry at all, the Department and court had duty to investigate and/or clarify the inconsistencies and provide evidence to the court about the extent of those inquiries before the court could properly determine ICWA did not apply].)

The court compounded the Department's error when it failed to ensure the Department complied with the July 2020 order directing it to investigate Zachary's possible Indian ancestry based on Jerry's responses in his ICWA-020 form. (See *In re T.G., supra,* 58 Cal.App.5th at p. 293 ["[t]he court here

13

fulfilled its initial obligation to ask about Tamara's possible Indian ancestry; it failed, however, to ensure the Department complied with its duty of further inquiry based on the responses the court had received from Tamara and Loretta S."]; *In re L.S., supra*, 230 Cal.App.4th at p. 1198 ["[T]he juvenile court also failed in its duty. Given the conflicting and inadequate information on mother's claim of Indian [ancestry], the court had a duty either to require the Agency to provide a report with complete and accurate information regarding the results of its inquiry and notice or to have the individual responsible for notice to testify in court regarding the inquiry made"].)[9]

In an alternate attempt to justify its failure to investigate, the Department points out great-grandparents are not included in the definition of "extended family members" in ICWA or California law. (See 25 U.S.C. § 1903(2) ["'extended family member' shall be as defined by the law or custom of the Indian child's tribe or, in the absence of such law or custom, shall be a person who had reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin or stepparent"]; § 224.1, subd. (c) [extended family member "shall be defined as provided in Section 1903 of" ICWA].)

---

[9] It appears the Department may have prompted the court's error by consistently reporting, incorrectly, that the court had determined in July 2019 that ICWA did not apply and by omitting any reference to the court's July 2020 ICWA order in its jurisdiction/disposition report and last minute information filing or at the December 2020 disposition hearing. Nonetheless, the court has its own continuing and affirmative duty to inquire whether the child is or may be an Indian child. (§ 224.2, subd. (a).)

14

Accordingly, the Department argues, Jerry's ICWA-020 form did not provide it with information that would have triggered any further duty of inquiry and it was not obligated to interview the paternal great-grandmother. (See § 224.2, subd. (e)(2)(A) ["[w]hen there is reason to believe the child is an Indian child," further inquiry includes "[i]nterviewing the parents, Indian custodian and extended family members"].)

At the threshold, the Department's argument ignores the court's July 27, 2020 order finding Jerry's ICWA-020 form gave rise to a duty to conduct further inquiry and directing it to conduct the necessary investigation. It is not the Department's role to unilaterally decide an existing court order no longer needs to be obeyed.

In addition, the Department's cramped interpretation of the applicable statutes reflects a fundamental misapprehension of the scope of the duty of further inquiry when, as here, a parent provides the Department with information the child is or may be an Indian child.[10] That duty includes not only the obligation to interview extended family members, as defined, but also to contact the tribe and "any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility." (§224.2, subd. (e)(2)(C); Cal. Rules of Court, rule 5.481(a)(4)(A); see *In re T.G., supra,* 58 Cal.App.5th at p. 290; cf. *In re D.S., supra,* 46 Cal.App.5th at p. 1053 [recognizing child's great-grandmother "may fall within this category"].) That would include, in this instance, the

---

[10]    "ICWA defines a "'parent'" to include 'any biological parent,' while excluding 'the unwed father where paternity has not been acknowledged or established.'" (25 U.S.C. § 1903(9); see *In re T.G., supra,* 58 Cal.App.5th at pp. 291-292.)

paternal great-grandmother and any other person Jerry may have identified during a proper interview.

The Department's reliance on *In re Austin J.* (2020) 47 Cal.App.5th 870 to argue Jerry's declaration of Indian ancestry on his ICWA-020 form was insufficient to trigger the duty of further inquiry is misplaced. The *Austin J.* court held that the mother's statements to a social worker that she "may have" Indian ancestry because the maternal grandmother had told her she had Cherokee ancestry were insufficient to trigger a duty of inquiry. The court held statements of Indian ancestry alone, without further indication the child was an "Indian child" within the meaning of the specific ICWA definition of that term, were insufficient to trigger the duty of inquiry. (*Id.* at p. 889.) Here, unlike the mother in *Austin J.*, Jerry checked the box on his ICWA-020 form indicating "one or more of my parents, grandparents or other lineal ancestors is or was a member of a federally recognized tribe." (See *ibid.* ["[m]other conspicuously did not check the boxes on her parental notification of Indian status forms that would have indicated she or any of the children is or may be a member of, or eligible for membership in, an Indian tribe"].) Moreover, to the extent the Department relies on the *Austin J.* court's holding that statements of Indian ancestry are too uncertain to provide a reason to believe the child was or may be an Indian child (see *id.*, at p. 884 [mother's statements, at most, created a possibility of Indian ancestry; "Indian ancestry, without more, does not provide a reason to believe that a child is a member of a tribe or is the biological child of a member"]), we have previously rejected that interpretation of the duty of inquiry as inconsistent with both the letter and spirit of ICWA and related California law: "We do not agree with *Austin J.*'s narrow

16

reading of the nature and quality of information sufficient to trigger the duty of further inquiry. [Fn. omitted.] In particular, that court's insistence a parent's express statement of Indian ancestry does not constitute a reason to believe an Indian child may be involved is fundamentally at odds with well-established ICWA law." (*In re T.G., supra,* 58 Cal.App.5th at p. 295; accord, *In re S.R.* (2021) 64 Cal.App.5th 303, 317 [*In re Austin J.*'s narrow interpretation of the duty of inquiry as requiring the level of knowledge required to provide ICWA notice conflicts with broader duty of further inquiry required under section 224.2, subdivision (e)].)[11]

The Department's assertion the omission of the name of a particular tribe on Jerry's ICWA-020 form negated any duty of

---

[11] As we explained in *In re T.G., supra,* 58 Cal.App.5th at page 295, the Legislature's creation of a duty to inquire that is significantly more expansive than the duty to provide ICWA notice is premised "on the commonsense understanding that, over time, Indian families, particularly those living in major urban centers like Los Angeles, may well have lost the ability to convey accurate information regarding their tribal status. [Fn. omitted.] As a result, the information available at the outset of dependency proceedings will often be inadequate to ensure the necessary protection of the rights and cultural heritage of Indian children, Indian families and Indian tribes. [Citation.] General information from the family about its ancestry frequently provides the only available basis to believe an Indian child may be involved. [Citation.] Additional investigation may not develop further information establishing the need for ICWA notice, but it is essential to the enforcement of the court's and child protective agency's 'affirmative and continuing duty to inquire' to construe broadly the duty to make further inquiry." (Accord, *In re S.R., supra,* 64 Cal.App.5th at p. 317.)

17

further inquiry is also without merit. (See *In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 786 [failure to provide any tribal name at all "does not, without more, relieve the child protective agency of its affirmative obligation to interview family members and others who could be expected to have relevant information concerning the child's status or the court of its duty to ensure an appropriate inquiry has been conducted before concluding ICWA does not apply to the case"]; *In re Michael V.* (2016) 3 Cal.App.5th 225, 235-236 [statement by children's mother that she had been told maternal grandmother was "full-blooded Indian" with no reference to a specific tribe obligated Department to contact other relatives to inquire if they might have information regarding children's possible Indian ancestry]; see also *In re T.G., supra,* 58 Cal.App.5th at p. 295 [explaining duty of further inquiry].)

   3. *The ICWA Error Was Not Harmless; Remand Is Required for the Department and the Court To Correct the Error*

Due to the Department's failure in the case at bar to conduct the appropriate inquiry and the court's failure to ensure compliance with its order, we are left with Jerry's ICWA-020 form declaring Indian ancestry, Jerry's subsequent statement denying Indian ancestry, and no explanation for his conflicting responses. On this essentially silent record, we cannot know within any degree of reasonable probability whether, had the Department made the requisite effort to clarify the discrepancy between Jerry's two responses, it would have discovered information necessitating further interviews and notice to one or more Indian tribes. Although it is typically the appellant's burden to demonstrate prejudice (*In re E.H.* (2018) 26 Cal.App.5th 1058, 1072 [reviewing court evaluates violation of a state law ICWA standard under the state law standard for

18

harmless error, that is, whether the appellant can show it is reasonably probable he or she would have enjoyed a more favorable result absent the error]; *In re G.C.* (2013) 216 Cal.App.4th 1391, 1400 [same]), when the silent record is caused by the Department's and the court's failure to make the appropriate inquiries, we simply cannot find the error harmless. (See *In re Gabriel G., supra,* 206 Cal.App.4th at p. 1168 [conditionally reversing order terminating parental rights due to Department's and court's failure to address father's conflicting responses about his Indian ancestry]; *In re N.G.* (2018) 27 Cal.App.5th 474, 484 [when the record is silent as to whether the Department asked the mother or other maternal relatives whether N.G. may have maternal Indian ancestry, ICWA error was necessarily prejudicial]; cf. *In re K.R.* (2018) 20 Cal.App.5th 701, 708 [although it is generally the appellant's burden to demonstrate prejudice, in an ICWA matter on appeal, the parent is in effect "acting as a surrogate for the tribe in raising compliance issues on appeal"; "[a]ppellate review of procedures and rulings that are preserved for review irrespective of any action or inaction on the part of the parent should not be derailed simply because the parent is unable to produce an adequate record"]; but see *In re A.C.* (2021) 65 Cal.App.5th 1060, 1071-1073.)[12]  Accordingly, remand is required for the Department and the court to address these ICWA errors.

---

[12]     In *In re A.C., supra,* 65 Cal.App.5th 1060, the court of appeal held the Department erred in failing to inquire whether the father had Indian ancestry; but, because the father did not claim on appeal to actually have Indian ancestry, the majority found the error was harmless.  (*Id.* at p. 1073, citing *In re Rebecca R.* (2006) 143 Cal.App.4th 1425, 1430-1431.)  As in *In re*

## DISPOSITION

The disposition order granting Jerry monitored visitation and otherwise denying him family reunification services is conditionally affirmed. The matter is remanded to the juvenile court for compliance with the duty of inquiry and, if applicable, notice provisions under ICWA and related California law and for further proceedings not inconsistent with this opinion.

PERLUSS, P. J.

We concur:

SEGAL, J.

FEUER, J.

---

*A.C.*, Jerry's appeal is silent as to whether he actually has any Indian ancestry, let alone whether Zachary is an Indian child. Nevertheless, unlike the majority in *In re A.C.*, we do not believe that assertion is essential to finding the Department's failure to make the appropriate ICWA inquiry was prejudicial (see *In re A.C.*, at p. 1073 [explaining that, had father simply claimed Indian ancestry, court would have found error prejudicial and reversed]), particularly when, as we have discussed, a parent may lack access to specific information without the Department's investigatory assistance. (See fn. 11, above.)